UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZACHARY LEWY, JOHN LEE, ERIC KLEMENT, AND BENJAMIN L. PADNOS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> SKYPEOPLE FRUIT JUICE, INC., RODMAN & RENSHAW, LLC, BDO LIMITED, CHILD VAN WAGONER & BRADSHAW, PLLC, YONGKE XUE, HONGKE XUE, XIAOQIN YAN, SPRING LIU, NORMAN KO, GUOLIN WANG, ROBERT B. FIELDS, AND JOHN SMAGULA, <br><br> Defendants. | 11 Civ. 2700 (PKC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT CHILD VAN WAGONER & BRADSHAW, PLLC'S
MOTION TO DISMISS WITH PREJUDICE THE "FIRST CLAIM" OF
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

DUANE MORRIS LLP
Anthony J. Costantini (AJC 6633)
Marvin G. Pickholz (MP 7097)
Suzan Jo (SJ 1974)
Kevin P. Potere (KPP 7711)
1540 Broadway
New York, New York 10036
Telephone: 212-692-1000
Facsimile: 212-692-1020
*Attorneys for Defendant
Child Van Wagoner & Bradshaw, PLLC*

# TABLE OF CONTENTS

                                                                                    **Page**

TABLE OF AUTHORITIES ......................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................1

ARGUMENT ..................................................................................................................3

    I.   Plaintiffs Fail to Refute the Insufficiencies of Their Complaint......................... 3

       A.  Plaintiffs Distort CWB's Role as an Independent Auditor ........................... 3

       B.  Plaintiffs Fail to Refute the Necessity of Pleading Subjective Belief ......... 4

       C.  CWB's Audit Report Is Clearly An Opinion Necessitating Pleading Disbelief.......... 5

       D.  Plaintiffs Allegations Against CWB Constitute Allegations of Fraud ........................ 7

       E.  Plaintiffs Fail to Defend the Auditing Standards They Rely Upon ............................ 8

       F.  Incomplete SAIC Filings Are Insufficient to Prove a Misstatement .......................... 9

CONCLUSION..................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Anixter v. Home-State Production Co.*,
    77 F.3d 1215 (10th Cir. 1996).................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................7, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................2, 4

*In re Charles Schwab Corp. Sec. Litig*,
    257 F.R.D. 534 (N.D. Cal. 2009).................................................................................4

*Dean v. China Argritech, Inc*
    11-CV-1331-RGK, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)........................................10

*Endo v. Arthur Anderson, Co., S.C.*,
    163 F.3d 463 (7th Cir. 1990).................................................................................4

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011).................................................................................2, 4-5, 7

*Garber v. Legg Mason, Inc.*,
    347 Fed. Appx. 665 (2d Cir. 2009).................................................................................4

*Herman & Maclean v. Huddleston*,
    459 U.S. 375 (1983).................................................................................5-6

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005), *aff'd*, 553 F.3d 187 (2d Cir. 2009)..............................8

*In re Lehman Bros. Sec. and ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011).................................................................................2-3, 6-7

*In re Livent, Inc. Noteholders Sec. Litig.*,
    355 F. Supp. 2d. 722 (S.D.N.Y. 2005).................................................................................5

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................................................4

*The Penn Ave. Funds v. Inyx, Inc.*,
    08-CV-6857-PKC, 2010 WL 743562 (S.D.N.Y. Mar. 1, 2010)............................................7

*Virginia Bankshares v. Sandberg*,
   501 U.S. 1083 (1991)...................................................................................................5

*In re WorldCom, Inc., Sec. Litig.*,
   346 F. Supp. 2d 628 (S.D.N.Y. 2004)........................................................................3

**Statutes**

15 U.S.C. § 77k(a)(4)....................................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 2, 7-8

**Other Authorities**

AU § 110.03 ..................................................................................................................4

AU § 311.07 .............................................................................................................. 8-9

Defendant Child, Van Wagoner & Bradshaw, PPLC ("CWB") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss with Prejudice the "First Claim" of Plaintiffs' Consolidated Amended Complaint, which is the only claim against CWB.

## SUMMARY OF ARGUMENT

Plaintiffs employ a rather bizarre strategy in opposing CWB's Motion.  Rather than attempting to refute, or even recognize, key case law requiring the pleading of a plausible connection between CWB's 2008 audit report and the alleged misstatements of others, plaintiffs content themselves with taking random pot shots intended to muddy the water enough to survive dismissal.  Such smoke and mirror tactics, while entertaining, should not be allowed to obscure the straightforward merits of CWB's Motion.  Nor should plaintiffs be permitted, through loose structure and broad terminology, to imply that there is any additional basis for their Section 11 claims against CWB than the one stated in their Complaint: that CWB somehow failed to detect the difference between Skypeople's SEC filings and the incomplete State Administration of Industry and Commerce ("SAIC") filings of some of Skypeople's subsidiaries, which an Affidavit submitted by plaintiffs states could only be accessed by Chinese attorneys.

Plaintiffs begin their opposition by conflating the role of an auditor with that of management, suggesting that auditors should face strict liability for another's claimed misstatement that appears outside their audit report.  This incredible interpretation of Section 11 is directly at odds with the language of CWB's audit report and the auditing standards plaintiffs themselves claim to rely upon, not to mention the language of the statute which holds the auditor responsible for statements it has made, not statements made by others.

Nor is there any legal precedent for plaintiffs' bizarre argument that since subjective belief is an element of the affirmative defense of due diligence, plaintiffs cannot be held

accountable for failing to plead disbelief by CWB.  Indeed, the Second Circuit has ruled in an exactly contrary manner, finding that claims resting on an allegation of false opinion <u>must</u> plead disbelief on behalf of the opinion maker to sustain a Section 11 claim.  *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011).  Acknowledging this precedent, at least implicitly, plaintiffs then jump to the incredible argument that CWB's audit report does not express an opinion at all, but is rather just a statement of fact regarding CWB's compliance with the applicable auditing standards.  Yet this argument is directly contradicted by Judge Kaplan's recent decision in *In re Lehman Bros. Sec. and ERISA Litig.*, 799 F. Supp. 2d 258, 300-01 (S.D.N.Y. 2011), where he states unequivocally that a statement of compliance with professional standards is an expression of an opinion, not a statement of fact, due to the judgmental nature of the statement.

Plaintiffs fare no better when trying to disprove that their claims are derived from allegations of fraud in the hope that the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007), standard is more forgiving than statutes and case law with respect to pleading fraud.  Lacking case law to support their theory, and failing to address any of CWB's cases demonstrating the true nature of the alleged negligence charges, plaintiffs resort to alliteration to suggest that all they are really claiming is that CWB is a dunce, not a defrauder, in having missed such an "obvious" means of evaluating financial statements as comparing incomplete Chinese-based SAIC filings for some of Skypeople's subsidiaries to consolidated financial statements prepared in accordance with U.S. accounting principles and filed with the SEC.  This "analysis" defies common sense.  That two sophisticated auditing firms are charged with making identical errors independent of one another suggests that plaintiffs are really claiming fraud, or at the very least recklessness, necessitating satisfaction of the pleading standards under Rule 9(b).  Plaintiffs also

make a half-hearted attempt to show that the auditing standards allegedly violated are sufficient
to support their claims, arguing that CWB's actions "cried out" for applying such general
auditing standards as "professional skepticism."  Yet plaintiffs fail to address the portion of
Judge Kaplan's *Lehman* decision holding that such conclusory allegations are insufficient.

Finally, plaintiffs bother to refute only a small portion of CWB's arguments
demonstrating that the differences between the incomplete SAIC filings of Skypeople's
subsidiaries and Skypeople's SEC filings are insufficient to plausibly claim a misstatement.  Nor
do plaintiffs succeed in showing that the standards under the SEC and SAIC are the same.

## ARGUMENT

I.      PLAINTIFFS FAIL TO REFUTE THE INSUFFICIENCIES OF THEIR COMPLAINT

### A.      Plaintiffs distort CWB's role as an independent auditor

Plaintiffs argue that "an auditor 'certifies' *financial statements* whenever the auditor
grants an issuer permission to use the auditor's opinion in a registered offering," and, as a result,
"plaintiffs sufficiently allege an auditor's liability simply by alleging that there is a misstatement
in a financial statement for which the auditor provided a clean audit opinion."  Opp. at 46-48.
They claim that the proposition, which they somehow find in the clear language of the statute,
has been specifically held to be "settled" by Judge Cote.  Yet Judge Cote's decision in *In re
WorldCom, Inc. Sec. Litig.* merely analyzed whether an underwriter could rely upon the comfort
letters issued by an accountant for interim financial statements in defense of a Section 11 claim.
346 F. Supp. 2d 628, 634-46 (S.D.N.Y. 2004).  It did not endorse plaintiffs' rule of absolute
liability.  In setting forth their position, plaintiffs also ignore the plain language from CWB's
audit report cited in plaintiffs' own Complaint that "[t]hese financial statements are the

responsibility of the Company's management," and contains no language regarding certification[1] of the financial statements.  Compl. ¶ 175.  Plaintiffs also ignore PCAOB standard AU § 110.03, which stands for the very same proposition.

Nor do the statutes and cases cited by plaintiffs somehow morph the role of CWB from an independent auditor into a party responsible for creating the financial statements and any inaccuracies therein.  *See In re Charles Schwab Corp. Sec. Litig*, 257 F.R.D. 534, 560 (N.D. Cal. 2009) ("an audit opinion is not a guarantee that the financial statements are entirely without error nor an exact science …").  Rather, plaintiffs' cases are easily distinguishable from the instant matter, and were decided well before the Second Circuit's *Regions* decision.  Opp. Br. at 46-47. None stand for the proposition that the issuance of an audit report on a allegedly false financial statements is sufficient for Section 11 liability.  For example, in *In re Marsh & McLennan*, the court found no basis for a fraud claim against the auditor.  501 F. Supp. 2d 452, 479 (S.D.N.Y. 2006).  And in *Endo v. Arthur Anderson,* the Seventh Circuit scrutinized whether a change in footnote language from one year to the next formed a basis for a claim.  163 F.3d 463, 465 (7th Cir. 1990).  CWB, as an independent auditor, is only responsible under Section 11 for statements made in the audit report.  *See* 15 U.S.C. § 77k(a)(4).  Thus, plaintiffs must point to a specific statement in CWB's audit report and plainly allege that a misstatement has been made.  *See Twombly*, 550 U.S. at 546, *Garber v. Legg Mason, Inc.*, 347 Fed. Appx. 665, 668 (2d Cir. 2009).

**B.     Plaintiffs fail to refute the necessity of pleading subjective belief**

Rather than focusing on the plausibility of their Section 11 pleading, as *Twombly* requires, plaintiffs divert everyone's attention by claiming that "the auditor's subjective belief is

---

[1] It is the certified public accountant who is "certified."  He issues a report, which, *inter alia*, expresses an opinion about the financial statements prepared by management.  He does not "certify" the financial statements as plaintiffs seem to suggest.

an element of the auditor's *affirmative defense* of due diligence," and "Plaintiffs need not deny affirmative defenses in their complaints."  Opp. at 49.  Yet plaintiffs fail to acknowledge, let alone distinguish, the ample case law cited in CWB's Moving Brief ("Moving Br.), which establishes subjective belief is also an element of a Section 11 claim when based on an auditor's opinion.  Moving Br. at 10-11.  In particular, the Second Circuit's recent decision in *Regions* and the Supreme Court decision in *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), make clear that plaintiffs must allege that the auditors disbelieved their opinion at the time it was expressed in order for the opinion to be actionable.  Moving Br. at 10.  The few cases cited by plaintiffs in support of their affirmative defense argument are easily distinguishable from the instant matter, and in no way contradict the Second Circuit's *Regions* decision.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d. 722, 726 n. 7 (S.D.N.Y. 2005); *Anixter v. Home-State Production Co.*, 77 F.3d 1215, 1230 (10th Cir. 1996).

**C.**     **CWB's audit report is clearly an opinion necessitating pleading disbelief**

In apparent backhanded recognition of controlling Supreme Court and Second Circuit authority mentioned above, plaintiffs next attempt to explain the inadequacy of their Amended Complaint by arguing that the CWB's audit report was not an opinion at all.  Opp. at 50. Plaintiffs claim that the Supreme Court's decision in *Huddleston* establishes that an independent auditor's audit report is not an opinion such that subjective belief must be sufficiently pled.  *Id*. Yet the Court in *Huddleston* does not even address this issue in its decision, which focuses primarily on "whether an implied cause of action under Section 10(b) of the 1934 Act will lie for conduct subject to an express civil remedy under the 1933 Act . . ."  *Herman & Maclean v. Huddleston*, 459 U.S. 375, 379 (1983).  And the section of the Supreme Court opinion cited by plaintiffs establishes that "[a]ccountants are liable under Section 11 only for those matters which

purport to have been prepared or certified by them." *Id*. at 381 n.11.  As indicated above, the only item in the Registration Statement prepared by CWB is its audit report expressing its opinion, not its "certification."

While admitting that they have no basis to say that CWB did not believe its opinion, plaintiffs allege that "[t]he plain wording of [CWB's audit letter] suggests that this is a question of fact, not a question of opinion: did BDO and CVWB successfully comply with the PCAOB's audit standards?"  Opp. at 50.  Yet the audit report is couched in language establishing it is an opinion rather than a statement of fact.  The report, which plaintiffs themselves quote from in their Amended Complaint, contains statements such as, "Our responsibility is to express an opinion …," "reasonable assurance," "We believe that our audit provides a reasonable basis for our opinion," and "In our opinion . . ."  Compl. ¶ 175 (emphasis added).  In order to evade those cases which make clear than an opinion is only actionable where the speaker did not believe what he is saying, plaintiffs now disavow that their Amended Complaint is based upon opinion, and focus on the statement of PCAOB compliance.

Judge Kaplan's recent *Lehman* decision clearly held that an assurance of professional compliance is a statement of opinion because of the judgmental nature of the audit.  Moving Br. at 12.  Plaintiffs make a disingenuous attempt to distinguish Judge Kaplan's holding, claiming that "Judge Kaplan's discussion arose in the context of a Section 10(b) claim, where it is necessary for the plaintiff to plead *scienter*."  Opp. at 51.  Yet clearly Judge Kaplan's discussion actually arose during an analysis of plaintiffs' Section 11 claims against the independent auditor, E&Y.  799 F. Supp. 2d at 299-300.  Plaintiffs further allege that Judge Kaplan acknowledged that "his holding went against the weight of authority . . ."  Opp. at 51.  In reality, Judge Kaplan merely observed that some courts have evaluated Section 11 claims "without regard to the

importance of the fact-opinion distinction." 799 F. Supp. 2d at 302. Judge Kaplan's analysis is completely consistent with the *Regions* opinion, where claims of bad auditing were treated as the expression of an opinion.

Contrary to their claim that "with near unanimity, courts in the Southern District have concluded that this is not a statement of opinion," the cases cited by plaintiffs (pp. 50-51) are easily distinguishable from the instant matter as most involve Section 10(b) claims, and none specifically address the issue of whether CWB's report should be considered an opinion. For example, in *The Penn Ave. Funds v. Inyx, Inc.,* the Court indicated that it well understood the fact-opinion distinction, and only found auditor misstatements due to a failure to detect a pervasive fraud involving fraudulent invoices <u>and</u> specific grounds for the claim of non-independence but concluded that the evidence of *scienter* was implausible. 08-CV-6857-PKC, 2010 WL 743562, at *11-12 (S.D.N.Y. Mar. 1, 2010).

### D.    Plaintiffs allegations against CWB constitute allegations of fraud

Plaintiffs deny that their Section 11 claim against CWB is grounded in fraud. Opp. at 52. In doing so, they ignore CWB's case law clearly establishing that a disclaimer of fraud in a complaint is insufficient to evade Rule 9(b) strictures. Moving Br. at 9. Instead, they argue that the gist of their claims is "that CVWB were *dunces*, not defrauders." Opp. at 52. This assurance does little to disprove that plaintiffs' allegations are really fraud claims dressed in negligence clothing. In evaluating arguments in support of a motion to dismiss, "the reviewing court [should] draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009). Plaintiffs would have the court believe that two respected auditing firms both independently violated professional standards by failing to compare SAIC filings for Skypeople's subsidiaries with Skypeople's SEC filings, and the basis for that failure was

*stupidity* on the part of the auditing firms.   This was either a deliberate choice (fraud) or a misjudgment (indicating opinion rather than fact).   Assuming the latter, common sense dictates that at the very least, plaintiffs allege recklessness on behalf of CWB, which alone triggers the pleading standards of Rule 9(b).   *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005), *aff'd*, 553 F.3d 187 (2d Cir. 2009).   More likely, however, the allegations that CWB overlooked information that according to plaintiffs obviously should have been evaluated in issuing its audit report is tantamount to willful inaction by CWB constituting fraud.

    **E.**    **Plaintiffs fail to defend the auditing standards they rely upon**

    Apparently running out of steam, plaintiffs barely put forth any effort in support of their argument that the auditing standards they allege CWB violated are sufficient to sustain a claim under Section 11.   Plaintiffs screech that BDO and CWB are mounting "a facial attack on PCAOB standards" and that "[i]f any case cried out for correct application of auditing standards, this was it."   Opp. at 53.   In support of this claim, plaintiffs launch into a diatribe (pp. 19-21, 53-54) about the related party 2009 allegations which the Amended Complaint directs at BDO and the other defendants.   *Id*. at 53-54.   Yet there are no allegations in the Amended Complaint that CWB failed to detect related party transactions in its 2008 audit.

    Eventually plaintiffs turn reluctantly to the financial statements which are at least related to the accusations against CWB.   Plaintiffs claim that the Chinese version of SkyPeople's subsidiaries' "financial statements are easily available to SkyPeople's agents – its auditors," and, in keeping with AU § 311.07, "SkyPeople's auditors should have actually obtained audited financial statements from SkyPeople's subsidiaries that were easily available to them."   Opp. at 54.   This argument is flawed for several reasons.   First, the Affidavit of Wang Yuanming, submitted by <u>plaintiffs</u> as an exhibit to the Horne Declaration dated January 25, 2012, clearly

states that "only local Chinese lawyers are qualified to conduct searches with AICs for business

files recorded at the AICs," highlighting the inability of CWB to obtain the SAIC records of

Skypeople's subsidiaries. [2]  Horne Decl. Ex. 1 ¶ 2.   Moreover, the auditing standard that

plaintiffs rely upon recommends knowledge of the entity's industry (AU § 311.07), which is the

sort of auditing standard Judge Kaplan found to be "couched in rather general and in some cases

inherently subjective terms," and insufficient to sustain a Section 11 claim.  Moving Br. at 12.

### F.        Incomplete SAIC filings are insufficient to prove a misstatement

In addition to proving that the auditors lacked access to the SAIC filings, Plaintiffs

conveniently ignore a majority of CWB's arguments as to why the incomplete SAIC filings of

SkyPeople's subsidiaries are insufficient to show a misstatement in the consolidated U.S. GAAP-

based 2008 Financial Statements filed with the SEC.  First, the SAIC filings plaintiffs rely upon

are admittedly incomplete.  Moving Br. at 8-9.  Second, plaintiffs make no attempt to refute the

evidence that "Chinese companies often under-report their profits in the SAIC documents as a

way to avoid disclosing their operating size to competitors."  *Id.* at 7-8 n.3.  Third, the

consequences of reporting false numbers to the SEC are at least as serious as filing false reports

with the SAIC, making it no more likely that SkyPeople would file true numbers with the SAIC

and false numbers with the SEC.  *Id.*  Fourth, while plaintiffs claim they are not required to

attach the 2008 SAIC filings to their Amended Complaint, their failure to at least attach the

filings, after being specifically invited to do so, to one of the number of affidavits filed in support

of the opposing brief raises significant credibility questions.  Here, the contra distinctions are so

strong as to render the opposite inference implausible.

---

[2] Nor could CWB have relied upon Skypeople to produce the SAIC filings because according to
plaintiffs, "a large number of China-based companies have also proffered forged documents to their
auditors."  Memorandum of Law in Support of Motion to Strike Improperly Proffered Documents at 8.

CWB's arguments are supported by the recent decision in *Katz*, which found that differences between SEC and SAIC filings alone do not support an inference of a misstatement. Moving Br. at 7.  Plaintiffs attempt to dismiss *Katz* as an outlier in the California courts.  Yet none of the three cases cited by plaintiffs, which were all decided before *Katz*, extoll the virtues of SAIC filings, nor do they suggest that SAIC filings are more reliable that SEC filings.   Opp. at 36-37.  Indeed, in *Dean v. China Argritech, Inc*., the court actually <u>granted</u> a motion to dismiss Section 11 claims even though disparity allegations were coupled with allegations of idle facilities.  11-CV-1331-RGK, 2011 WL 5148598, at *4-5 (C.D. Cal. Oct. 27, 2011).

Finally, plaintiffs acknowledge that there are differences between the U.S. GAAP and Chinese accounting principles but claim that it is "perfectly plausible" that the accounting treatment of revenue is the same under both standards.  Opp. Br. at 37.  Simply claiming that there is a <u>possibility</u> that the SAIC standards overlap with American accounting standards fails to meet plaintiffs' burden to state a claim with facial <u>plausibility</u>.[3]  *Iqbal*, 129 S. Ct. at 1940.

## <u>CONCLUSION</u>

Based on the forgoing, the Amended Complaint should be dismissed with prejudice.

Dated:  New York, New York
        February 15, 2011

                               /s/ Anthony J. Costantini
                               Anthony J. Costantini (AJC 6633)
                               Marvin G. Pickholz (MP 7097)
                               Suzan Jo (SJ 1974)
                               Kevin P. Potere (KPP 7711)
                               DUANE MORRIS LLP
                               1540 Broadway
                               New York, NY 10036
                               Telephone: 212-692-1000

                               *Attorneys for Defendant Child*
                               *Van Wagoner & Bradshaw, PLLC*

---

[3] Notably, Plaintiffs' CESR report notes a "lack of any objective evidence of adequate implementation" of China's new standards since they only took effect in January 2007.  CESR/07-761 (Dec. 2007), at ¶ 71.